373 P.2d 911

**SALT LAKE CITY, a municipal corporation of the State of Utah, and J. Bracken Lee, Plaintiffs and Appellants,**

v.

**The METROPOLITAN WATER DISTRICT OF SALT LAKE CITY, a corporation, and Salt Lake County, Defendants and Respondents.**

No. 9617.

Supreme Court of Utah.

Aug. 17, 1962.

Homer Holmgren, City Atty., Jack L. Crellin, Asst. City Atty., Salt Lake City, for appellants.

Van Cott, Bagley, Cornwall & McCarthy, Fisher Harris, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from a declaratory judgment holding that a 1961 tax levied by defendant

5. See cases footnote 3, supra.

.6. Ibid.

water district was 1) valid, that 2) plaintiff city was not entitled to credit against taxes for amounts paid for water purchased under an existing contract, and 3) that the district's 1961 levy could be used "for the purpose of carrying on the operations of the district during the ensuing year."

As to 1) and 2) we affirm and as to 3) we have the following to say below. No costs awarded.

The district is a legislative creature that has been operating for many years.[1] It was created for the purpose of acquiring, conserving, distributing, financing and otherwise dealing with water for users in the district, with power generally to tax for enumerated purposes, except as to operational matters in which latter case the levy must not exceed 2½ mills.[2] Such restriction is inapplicable to a levy for paying principal and interest on its bonds, debts to the United States, or assessments or debts to those furnishing it with water.

On August 7, 1961, pursuant to statute,[3] its board of directors levied a 2½ mill tax. The resolution recited in the language of the statute that "the amount of money necessary to be raised by taxation during the fiscal year * * * 1961, and * * * for all district purposes is the sum of $639,690," and "that in lieu of the tax herein levied, the city of Salt Lake may pay that sum." [4]

Plaintiffs urge that (I) the city is entitled, under 73-8-43 to a credit for sums paid the district under its existing contract to purchase water from the latter, against the tax imposed, (II) that the district cannot tax to create a surplus, or (III) for operations in years subsequent to that in which the tax is levied.

We think (I) to be without merit, and point to 73-8-18(k), (l), which gives a participating city a preferential right *to purchase* water from the district under a prescribed formula. The section looks to a contractual relationship and transaction, and involves the requirement of a fixed purchase price to be paid for the water. It gives rise to an enforceable right for the purchase price. Plaintiffs contend that the city is entitled to an offset against taxes levied by the district, under Title 73-8-43, which permits cities to pay to the districts, *"out of funds derived from the sale of water or other funds not appropriated to some other use,* such amounts *as may be determined"* by the city officials, which payments *"may be made in avoidance of taxes* as herein provided, *or otherwise,* and *shall not be deemed gratuitous or in the nature of gifts, but shall be deemed payments for water or services in connection with the distribution of water,"* in which event the city would be relieved pro tanto of the tax

---

1. Under Title 73-8, Utah Code Annotated 1953.
2. Title 73-8-18, U.C.A. 1953.
3. Title 73-8-36, U.C.A. 1953.
4. In accordance with 73-8-37 and 73-8-43, U.C.A. 1953.

levies, any excess payment to be credited pro tanto against future tax levies.

It is readily seen that the payment provided for under the section strictly is voluntary and permissive, not contractual in any way, initiated by the optional action of the city officials. Title 73–8–18(k), (*l*) and other provisions allowing for purchase under contract, and the fact that the city here has a subsisting contract, under whose provisions the payments are obligatory, not permissible, or voluntary, are so inconsistent, not only with respect to the gist of 73–8–43, dealing with a credit against *tax levies,* not payments under a binding contract, but with the conception that one by making a compulsory payment under a contract cannot receive credit against the contractual liability and also a credit against another liability, the taxes levied, as to dispel any ambiguity anent the meaning of the statute and the intent of the legislature.

The section may be in aid of cities to assure their inhabitants of a future use. In these days of deficit financing, cities, and particularly the smaller ones, may have an unexpected fiscal harvest because of some local and perhaps unanticipated, but temporary prosperity, leading to a lucrative sale of water by them producing a surplus, or by the acquisition of an unappropriated surplus by some other means, which moneys under the subject section could be paid to the district as a buffer against payment of taxes in future, but leaner years,—thus protecting their citizens against future liens that otherwise seriously could affect the title to their property.

We believe that a reasonable construction of the act as a whole does not justify any credit *against the taxes levied for compulsory contract commitments,* but only for voluntary or permissive payments made under the provisions of the section. That is what the section says throughout, except for the phrase upon which plaintiffs so heavily lean, and which this court concedes does not add great clarity to the section. We think, however, that the phrase "shall be deemed payments for water or services in connection with the distribution of water" is so unrelated to the gravamen of the whole section, which has to do with permissive, not obligatory payments under a contract, (in reduction or elimination of present or future tax levies) emphasizes the phrase preceding it, to which it is connected, that such payments "shall not be deemed gratuitous or in the nature of gifts." We believe the former phrase simply modifies the latter and was designed to eliminate any misunderstanding to the effect that such payments might be considered applicable to something other than might be encompassed in the water district act. Were we to conclude otherwise, there would be the anomalous situation where a city without any funds from the sale of water, and without funds not appropriated to a specific purpose could get no relief against a contract for the pur-

chase of water from the district, while the city next door that had ample funds from the sale of water and a surplus bonanza of unappropriated funds, could relieve itself of its promise to purchase by a permissive payment to the district. Where the tenor of the section looks toward crediting permissive payments against taxes, not contractual payments, and where any other interpretation would lead to such result, it seems reasonable to conclude that the legislature intended the section as we have interpreted it.

As to II) : That the district cannot tax to create a surplus for future years. The issue here is not that broad, but has to do with the 2½ mill phase of the section with respect to "administering the district and operating its properties." The trial court's judgment was to the effect that the levy was valid under the act "for the purpose of carrying on the operation of the district for the ensuing year." Which brings us to (III).

■ We think the judgment is not borne out by any provision of the act, nor by any provision in the board's resolution. Title 73–8–36, which authorizes the resolution, does not permit of any such conclusion, and there is nothing in the resolution that can be construed as authorizing or attempting to authorize it.

If the trial court's conclusion that under the act the tax was available for purposes of carrying on the operations of the district for the "ensuing year" could be upheld, the language of the section equally would be susceptible to a meaning that the tax could be used for such purposes for "ensuing years." We do not believe anyone reasonably could construe the wording of the act as supporting such result.

Although we agree with the plaintiffs that under the act a levy of not more than 2½ mills in any one year has to do with current costs of operation in that year, to the exclusion of building a surplus for such purpose for "ensuing years," the board's resolution is consistent with such view, so far as its language is concerned. It says nothing about using the tax for future operations. This, although there was some loose talk at the board meeting and in the testimony of a witness, about the levy being necessary for emergency, drought and future protective measures, neither of which circumstances could change the statute nor the wording of the resolution.

Any misconception on the part of the board as to the meaning of the act, certainly can be corrected by proper allocation of the subject levy to current operation costs in consonance with this opinion. If 1960 accrued moneys in a particular fund were used to pay 1961 operating obligations, there seems to be no reason why 1961 levies for that purpose cannot be restored to the fund and levies in the future made in accordance with the observations of this decision.

It seems to us that 73–8–18(i) reflects an intention that the resolution under 73–8–36 which provides for the levy, should specify the statutory purposes for which the levy is set, including a showing of the number of mills levied "for administering the district and operating its properties" for that year, and the number of mills levied for each of the other authorized expenditures enumerated therein. Under principles of budgetary control, it would appear that levies approaching a reasonably close estimate certainly would be sustainable under the letter and spirit of the act, with a concomitant duty to adjust any reasonable differences in estimate and actual cost from year to year.

As a matter of fact, the board levied but 2½ mills,—nothing in excess of that allowed under 73–8–18(i). The board could have exhausted the amount for operational costs had they aggregated the amount produced by the levy and had it been necessary, but it appears that the levy, although coincidentally being the same as that which is a maximum for operations, nonetheless it applied to all district purposes,[5] including paying for bond, debt, water assessments, etc., each of which last mentioned items have no mill levy ceiling. This fact alone, that there was not levied more than 2½ mills should be determinative of the validity of the levy so far as 1961 is concerned, without a showing that the levy was not legiti-

mate for purposes under the act and was a subterfuge to circumvent its provisions. No such showing was made.

The case is remanded with instructions to enter judgment consonant with our decision.

WADE, C. J., and McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

---

5. "All district purposes" could only mean those that did not specifically require authorization at an election, or the like, such as is the case under 73–8–22.